COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

RICARDO MARTINEZ,                                      )

                                                                              )               No.  08-01-00358-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
409th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 20000D04686)

                                                                              )

 

 

O
P I N I O N

 

Ricardo Martinez
appeals his conviction for the offense of aggravated assault on a public
servant, enhanced by a prior felony conviction. 
The jury found Appellant guilty and after finding the enhancement
paragraph to be true, assessed punishment at 15 years= imprisonment in the Institutional
Division of the Texas Department of Criminal Justice.  In Issues One through Five, Appellant
challenges the legal and factual sufficiency to support his conviction, the
trial court=s
granting of a motion to quash a subpoena for a defense witness, and the trial
court=s denial
of his requested instructions on a lesser included offense and
self-defense.  In Issue Six, Appellant
asserts that his trial counsel rendered ineffective assistance by failing to
subpoena the District Attorney and/or assistant district attorneys to support
Appellant=s defense
theory.  We affirm.

 








SUMMARY
OF THE EVIDENCE

On April 20, 2000
around mid-morning, Officer Jared Lamb was on routine patrol in a marked police
car when he saw the driver of a tan pickup truck run a stop sign.  Officer Lamb noted that the truck had a large
magnetized sign on its side door advertising a refrigeration business.  Officer Lamb turned on his overhead lights to
stop the truck.  The vehicle pulled over
and Officer Lamb approached the driver, later identified as Appellant.  Officer Lamb asked Appellant how he was
doing.  Appellant replied, not too well
because he was caught running a stop sign. 
Officer Lamb asked Appellant for identification and proof of
insurance.  Appellant told Officer Lamb
that he did not have any.  Officer Lamb
then began taking notes on the business information he observed on the truck
and asked Appellant for his name and date of birth.  Officer Lamb told Appellant that he would be
right back and proceeded to walk behind his patrol vehicle to start writing the
citations.  Officer Lamb had just begun a
radio check for outstanding warrants when he looked up and saw Appellant driving off in the truck.  Officer Lamb testified that he had not told
Appellant that he could leave and that Appellant knew why he had been
stopped.  Police department policy
prohibited pursuit, so Officer Lamb did not attempt to chase Appellant.  Instead, Officer Lamb gave radio dispatchers
the information he had on Appellant. 
Since Officer Lamb was still in the area, the dispatchers reported back
to him that Appellant had an outstanding warrant.








Officer Ricardo
Diaz, the complainant, testified that on April 20, 2000, he was assigned to the
El Paso Police Department=s
Impact Team, a plain-clothes surveillance and investigations unit for the
area.  That morning Officer Diaz was
working with other officers dressed in regular civilian clothes when they were
dispatched information on a subject who had fled from Officer Lamb.  The dispatcher told the officers Appellant=s name and the type of vehicle he was
driving.  Officer Diaz and his fellow
officer David Carrasco set up surveillance at American Refrigeration Company,
located at 5408 Dailey.  Officers Diaz
and Carrasco had been meeting with Mr. Mena, the
owner, inside the business office for about fifteen or twenty minutes before
Appellant arrived at the front gate, driving a pickup truck.  Because the entrance gate was not completely
open, Appellant parked in the driveway of the business off of Dailey
Street.  When the pickup truck stopped,
Officer Diaz told Mr. Mena to let the vehicle drive
in, but instead Mr. Mena went out to open the gate
and started talking to Appellant. 
Officer Carrasco felt that Appellant was going to flee again, so the
officers approached the gate area and identified themselves as police
officers.  In identifying themselves, the
officers pulled out badges, which they wear around their necks under their
shirts.  At that time, the officers did
not have their guns drawn.








Officer Diaz
testified that as he and Officer Carrasco approached, Appellant reversed the
truck and stepped hard on the gas. 
Officer Diaz pulled out his gun when the vehicle started peeling out
backwards onto the street.  The officers
chased the vehicle on foot, running into the street after it.  Appellant slammed on his brakes to avoid hitting
other vehicles in his rear, whose drivers were honking their horns.  Appellant had stopped reversing and Officer
Diaz was standing to the left front side of Appellant=s
vehicle approximately twenty feet away. 
Officer Diaz stated that he and Officer Carrasco continued to identify
themselves, both in English and Spanish, and asked Appellant to show his
hands.  Appellant did not comply.  Officer Diaz saw Appellant move something
inside the truck.  Appellant then put the
vehicle into gear and looked right at Officer Diaz while driving straight
towards him.  Officer Diaz had to move to
the side to avoid being hit by Appellant=s
truck.  Officer Diaz testified that the
truck missed him by a foot and that he would have been hit had he not
moved.  At that moment, Officer Diaz was
in fear of bodily injury, was just trying to get out of the way to stay alive,
and did not want to be hurt.  Officer
Diaz was also fearful because he thought he might be pinned between vehicles or
otherwise seriously injured because there were other cars parked along the side
of the street.

With their guns
drawn, the officers asked Appellant to turn off the vehicle and step
outside.  Appellant, however, just
continued forward and drove away from the officers.  The officers got in their unmarked vehicle to
look for Appellant, but could not locate him. 
They radioed dispatchers to alert other police units and advised them of
what had happened with Appellant.

Officer Fernando
Carrasco offered similar testimony about the incident between Appellant and the
officers.  According to Officer Carrasco,
he and Officer Diaz set up surveillance of the business in a nearby parking lot
and were stationary for about forty-five minutes to an hour without seeing
Appellant=s
vehicle.  The officers decided to go and
talk to the business owner to explain the situation.  At the business, the officers knocked on the
door, walked in, and they identified themselves as police officers by showing
their badges.  They talked to the
business owner for about twenty to twenty-five minutes before seeing Appellant=s vehicle.  They saw Appellant drive up to the business
and stop in front of the partially opened gate. 
The business owner approached the truck while the officers remained
inside the office.  Officer Carrasco
observed Appellant and the business owner conversing and told Officer Diaz his
suspicion that the owner was going to tell Appellant that the officers were
there and Appellant would flee.








The officers
decided to approach Appellant while he was stopped at the gate.  As they started coming up to the truck, they
pulled out their police badges.  Officer
Carrasco approached from the right corner of the truck and Officer Diaz
approached from the left corner of truck. 
Officer Carrasco testified that they were screaming at Appellant, AEl Paso Police, El Paso police
officers, police officers.@  Officer Carrasco also told Appellant the same
in Spanish.  Officer Carrasco had his
weapon drawn.  Appellant engaged his
vehicle, rapidly reversed into the street, and was revving the engine.  Appellant was looking straight at the
officers who were in front of his vehicle. 
Appellant stopped in the street because another vehicle was behind
him.  Officer Carrasco had his weapon
drawn, his badge was out, and he was telling Appellant to get out of the
vehicle.  At all times, Officer Carrasco
maintained eye contact with Appellant. 
Officer Carrasco saw that Officer Diaz was standing towards the left
fender area of Appellant=s
vehicle and recalled telling Officer Diaz to get out of the way.  Appellant shifted into gear and Officer
Carrasco saw Officer Diaz jump to the side. 
As Appellant drove off, Officer Carrasco gave the dispatcher a
description of the vehicle and the direction in which Appellant had fled.  Twenty to thirty minutes later, another
Impact Unit took Appellant into custody. 
When Officer Carrasco arrived Appellant had already been arrested and
was belligerent towards the officers, screaming and kicking the police car door
and windows.








On
cross-examination, Officer Carrasco conceded that from the dispatched
information on Appellant nothing indicated that Appellant had a weapon.  Officer Carrasco testified that they ran
towards the truck, and as he was moving towards the truck, he pulled out his
badge.  When Officer Carrasco got to the
truck, he then pulled out his gun. 
Officer Carrasco also testified that the windows of Appellant=s vehicle were down.  Office Carrasco conceded that Appellant did
not try to run him or Officer Diaz over at that point.  After Appellant reversed and stopped in the
street, Officer Carrasco did not know whether Officer Diaz was in front of
Appellant=s vehicle
or to the side, but did know that he was in that general area, very close to
the vehicle, and on the street.  Officer
Carrasco agreed that once Appellant drove pass the officers, Appellant did not
come back a second time and try to run him over.  Officer Carrasco also conceded that Appellant
did not make a threat to him at the police station during processing.

At trial, Jose Mena, the owner of American Refrigeration, was called as a
defense witness.  Mr. Mena
testified that police officers who were not wearing uniforms came to his
business before 11 a.m. on April 20, 2000 and were looking for Appellant, one
of his employees.  Mr. Mena opened the gate when Appellant arrived.  Mr. Mena denied
talking to Appellant before opening the gate. 
As Mr. Mena was walking back to the office,
one of the officers came running while the other was walking slow.  This was all that Mr. Mena
saw because what happened next was too fast and then it was over.  Mr. Mena did not
see Appellant reverse into the street and then drive forward.

Jorge Gomez
Carrillo, an employee of American Refrigeration, also testified on behalf of
Appellant=s
defense.  Mr. Gomez was waiting in a van
on the other side of the gate when he saw Appellant arrive at the
business.  Mr. Gomez stated that he saw
Appellant put the truck in reverse and leave. 
When he turned to look, he saw one of the officers on the sidewalk and
the other one was behind the van.  Mr.
Gomez did not see any guns drawn and did not see the officers in front of
Appellant=s
vehicle.  On cross-examination, Mr. Gomez
admitted that he was not paying attention to what the police officers and
Appellant were doing.








The jury found
Appellant guilty of aggravated assault on a public servant, enhanced by a prior
felony conviction and assessed punishment at fifteen years= imprisonment.  Appellant filed a motion for new trial, which
was overruled by operation of law. 
Appellant now timely appeals his conviction.

DISCUSSION

Sufficiency
of the Evidence

In Issues One and
Two, Appellant argues that the evidence was legally and factually insufficient
to sustain his conviction for aggravated assault on a public servant.  Specifically, Appellant asserts that the
State failed to establish that Appellant intentionally or knowingly threatened
Officer Diaz with imminent bodily injury as alleged in the indictment.[1]

Standards
of Review 








In determining the
legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2788-89, 61 L.Ed.2d 560, 573 (1979); Lacour
v. State, 8 S.W.3d 670, 671 (Tex.Crim.App. 2000).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See Alvarado v. State, 912
S.W.2d 199, 207 (Tex.Crim.App. 1995); Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992). 
Rather, our duty is to determine if both the explicit and implicit
findings of the trier of fact are rational by viewing
all the evidence admitted at trial in the light most favorable to the
verdict.  See Adelman, 828 S.W.2d. at 421-22; Menchaca
v. State, 901 S.W.2d 640, 651 (Tex.App.--El Paso
1995, pet. ref=d).  In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict. 
See Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App.
1991); Menchaca, 901 S.W.2d at 651.  

In reviewing the
factual sufficiency of the evidence, we consider all of the evidence, but do
not view it in the light most favorable to the verdict.  Johnson v. State, 23
S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis
v. State, 922 S.W.2d 126, 129 (Tex.Crim.App.
1996).  A reviewing court in
conducting a factual sufficiency review asks whether a neutral review of all of
the evidence, both for and against the finding, demonstrates that the proof of
guilt is so obviously weak as to undermine confidence in the jury=s determination or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.  Johnson, 23 S.W.3d at
11.  We review the evidence
weighed by the trier of fact that tends to prove the
existence of the elemental fact in dispute and compare it with the evidence
that tends to disprove that fact.  Jones
v. State, 944 S.W.2d 642, 647 (Tex.Crim.App.
1996), cert. denied, 522 U.S. 832, 118 S.Ct.
100, 139 L.Ed.2d 54 (1997).  Although we
are authorized to set aside the fact finder=s
determination under either of these two circumstances, our review must employ
appropriate deference and should not intrude upon the fact finder=s role as the sole judge of the weight
and credibility given to any evidence presented at trial.  See Johnson, 23
S.W.3d at 7. 

Aggravated
Assault on a Public Servant








A person commits
the offense of assault of a public servant if he intentionally or knowingly
threatens another with imminent bodily injury. 
See Tex.Pen.Code Ann. 22.01(a)(2)
(Vernon 2003).  Aggravated assault occurs
if, in the course of committing an assault under Section 22.01, the person uses
or exhibits a deadly weapon.  See Tex.Pen.Code Ann. ' 22.02(a)(2).  An offense
under Section 22.02 is a first-degree felony if the offense is committed
against a person the actor knows is a public servant while the public servant
is lawfully discharging an official duty. 
See Tex.Pen.Code Ann. '
22.02(b)(2).  A Apublic servant@
is a Aperson
elected, selected, appointed, employed, or otherwise designated as . . . an
officer, employee, or agent of government.@  Tex.Pen.Code
Ann. ' 1.07(a)(41)(A)(Vernon 2003). 
The actor is presumed to have known the person assaulted was a public
servant if the person was wearing a distinctive uniform or badge indicating the
person=s
employment as a public servant.  Tex.Pen.Code Ann. ' 22.02(c).  AA
person acts intentionally, or with intent, with respect to the nature of his
conduct or to a result of his conduct when it is his conscious objective or
desire to engage in the conduct or cause the result.@  Tex.Pen.Code Ann. ' 6.03(a).  AA
person acts knowingly, or with knowledge, with respect to the nature of his
conduct or to circumstances surrounding his conduct when he is aware of the
nature of his conduct or that the circumstances exist.  A person acts knowingly, or with knowledge,
with respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.@  Tex.Pen.Code Ann. ' 6.03(b).

The indictment in
this cause alleged that:

[O]n or about the 20th day of April,
2000 . . . in the County of El Paso and State of Texas, RICARDO MARTINEZ, JR.,
hereinafter referred to as Defendant, did then and there intentionally and
knowingly threaten RICARDO DIAZ with imminent bodily injury and did then and
there use and exhibit a deadly weapon, to wit: 
a motor vehicle, during the commission of said assault, and that said
RICARDO DIAZ was then and there a public servant, to wit:  a City of El Paso Police Officer in the
lawful discharge of an official duty, and that said Defendant knew RICARDO DIAZ
was a public servant.

 

It was further alleged that
Appellant Aused and
exhibited a deadly weapon, to wit:  a  motor vehicle,
during the commission of and immediate flight from said offense.@








Appellant asserts
that the State failed to prove the requisite culpable mental state for the
charged offense.  Appellant also contends
that the record does not sufficiently establish that Appellant directed his
vehicle towards the police officers, that he maneuvered the vehicle in such a
manner as to assault the officers, or that he even knew that the plain-clothed
individuals approaching him with weapons were police officers.

The evidence
adduced at trial shows that Officer Diaz and Officer Carrasco were dispatched
to American Refrigeration Company, Appellant=s
place of employment, to set up surveillance in order to apprehend Appellant,
who had fled from Officer Lamb that morning. 
When Appellant arrived at the location, he parked his vehicle in the
driveway at the front gate of the business. 
The officers observed the business owner talking to Appellant at the
gate and Officer Carrasco suspected that Appellant was going to flee
again.  As the officers approached the
gate area they identified themselves as police officers and displayed their
badges.  According to Officer Diaz, the
officers did not have their weapons drawn at that time.  As they approached, Appellant reversed the
truck and pressed hard on the gas. 
Officer Diaz then pulled out his gun and they began chasing the vehicle,
running into the street.  When Appellant
stopped reversing, Officer Diaz was standing in the street on the left front
side of Appellant=s vehicle
approximately twenty feet away.  The
officers repeatedly identified themselves as police officers in both English
and Spanish.  Appellant did not comply
with their instructions to show his hands and get out of the vehicle.  Instead, Appellant looked right at Officer
Diaz and drove straight towards him. 
Officer Diaz testified that Appellant=s
vehicle missed him by a foot and that if he had not moved out of the way,
Appellant would have hit him.  Officer
Diaz recalled that at that moment, he feared bodily injury.








Threats may be
communicated by action, conduct, or words.  McGowan v. State, 664
S.W.2d 355, 357 (Tex.Crim.App. 1984).  Moreover, the jury may infer intent or
knowledge from the accused=s
acts, words, and conduct at the time of the offense.  See Dues v. State, 634
S.W.2d 304, 305 (Tex.Crim.App. [Panel Op.]
1982).  Viewing the evidence in a light
most favorable to the verdict, we conclude that a rational jury could
reasonably infer from Appellant=s
conduct that he intentionally and knowingly threatened Officer Diaz by driving
straight towards the officer while the officer was standing approximately
twenty feet in front of Appellant=s
vehicle and ordering Appellant to desist. 
Prior to Appellant=s
escape, the police officers displayed their badges and repeatedly identified
themselves as police officers.  Officer
Carrasco also observed that the windows of Appellant=s
vehicle were down during the incident. 
Even if Appellant did not intentionally threaten Officer Diaz by use of
his motor vehicle, the jury could infer that Appellant was aware his conduct
was reasonably certain to cause a threat of imminent bodily injury.  Accordingly, we find that the evidence was
legally sufficient to sustain the conviction. 
Issue One is overruled.

In Issue Two,
Appellant challenges the factual sufficiency of the evidence, arguing that the
State failed to establish that Appellant=s
conduct was an intentional assault. 
Rather, Appellant claims the evidence showed that he was fleeing from
individuals attired in plain clothes who were waving
and pointing weapons at his head. 
Appellant asserts that the evidence demonstrates that he was simply
attempting to get away and to remove himself from a dangerous situation.








At trial, both
officers testified that they were assigned to a plain-clothes surveillance
investigations unit for the area. 
Although they were not wearing uniforms, the officers in approaching
Appellant=s
employer and Appellant identified themselves as police officers and displayed
their badges.  Defense witness Jose Mena, Appellant=s
employer, observed the officers running towards the front gate, but did not see
what happened next because it all happened so fast.  Mr. Mena did not
see Appellant reverse into the street and did not see him drive forward.  Oscar Gomez Carrillo, a fellow employee,
observed Appellant reverse the truck and leave. 
Mr. Gomez did not see officers in front of Appellant=s vehicle and did not see any guns
drawn.  Mr. Gomez, however, conceded that
he was not paying attention to Appellant and the officers.  The jury is the sole judge of witness
credibility and is free to believe or disbelieve any witness.  Jones v. State, 984 S.W.2d 254, 258 (Tex.Crim.App. 1998); Sharp v. State, 707 S.W.2d 611,
614 (Tex.Crim.App. 1986), cert. denied, 488
U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).  While Appellant may have intended to flee
from the scene, there is no evidence in the record to contradict the State=s proof that in so doing, he drove his
vehicle directly at Officer Diaz, causing the officer to fear imminent bodily
injury.  The proof of guilt in Appellant=s case is not so obviously weak as to
undermine confidence in the jury=s
determination nor is it greatly outweighed by contrary proof as to be clearly
wrong and manifestly unjust.  See
Johnson, 23 S.W.3d at 7.  We conclude that the evidence was factually
sufficient to sustain Appellant=s
conviction.  Issue Two is overruled.

Motion
to Quash Subpoena

In his third
issue, Appellant contends the trial court erred in quashing his subpoena in
which he sought to call Jan Sumrall, a city council member, as a witness.  Appellant argues that in granting Ms. Sumrall=s motion to quash the subpoena, the
trial court deprived him of compulsory process for obtaining a witness and
violated his fundamental right to a fair trial.








Criminal
defendants have a right to compulsory process for obtaining witnesses.  U.S.
Const. amend.VI ; Tex.Const. art. I, ' 10.  It is Ain
plain terms the right to present a defense, the right to present the defendant=s version of the facts as well as the
prosecution=s to the
jury so it may decide where the truth lies.@  Coleman v. State, 966 S.W.2d 525, 527
(Tex.Crim.App. 1998)(Opin. on reh=g), quoting, Washington v.
Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18
L.Ed.2d 1019 (1967).  This right,
however, does not guarantee the right to secure the attendance and testimony of
any and all witnesses; rather it guarantees only compulsory process for
obtaining witnesses whose testimony would be both material and favorable to the
defense.  Id. at
527-28.  To exercise this right,
the defendant must make a plausible showing to the trial court, by sworn
evidence or agreed facts, that the witness=
testimony would be both material and favorable to the defense.  Id. 
Counsel=s mere
belief that a witness would support the defense=s
case is insufficient to establish materiality. 
See Castillo v. State, 901 S.W.2d 550, 553 (Tex.App.--El Paso 1995, pet. ref=d).  We review the trial court=s decision to quash a subpoena for an
abuse of discretion.  See Drew v.
State, 743 S.W.2d 207, 225 n.11 (Tex.Crim.App.
1987), citing, United States v. Nixon, 418 U.S. 683, 702, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974) and Ross v.
Estelle, 694 F.2d 1008, 1010 (5th Cir. 1983); Rodriguez v. State, 90
S.W.3d 340, 358 (Tex.App.‑-El Paso 2001, pet.
ref=d); Muennink
v. State, 933 S.W.2d 677, 684 (Tex.App.--San
Antonio 1996, pet. ref=d).








Here, Appellant
subpoenaed city council member Jan Sumrall to testify at his trial.  Ms. Sumrall=s
lawyer filed a motion to quash the subpoena, on grounds that Ms. Sumrall had no
knowledge of the facts of Appellant=s
case, no knowledge of undercover police tactics, or any other relevant or
admissible testimony.  The trial court
held a hearing on the motion to quash at which Ms. Sumrall was questioned about
her knowledge of undercover police operations and Appellant=s case.

At the hearing,
Ms. Sumrall testified that she did not know Appellant and was not aware of any
of the circumstances that led to his arrest. 
Ms. Sumrall had no opinion as to when it is appropriate to make an
arrest undercover and when it is not.  On
cross-examination, Ms. Sumrall stated that the city council had held some
hearings at their meetings concerning the use of unmarked police vehicles.  Ms. Sumrall recalled that the hearings were
in response to people=s
complaints that there were police officers pulling them over and they did not
know who was pulling them over.  The
complaints were specifically about unmarked police cars issuing citations on
Interstate-10.  In clarifying the nature
of the complaints, Ms. Sumrall stated that two elderly women complained that
when driving late at night on I-10 they had seen a car coming behind them very
fast with flashing lights and were not sure if it was, in fact, a police car at
that point.  The turning red lights did
not indicate to them that it was a police car because there could be someone
out there masquerading as a police officer. 
The council members concluded that this really was not a problem.








Appellant also
testified at the hearing on the motion to quash.  Appellant stated that he believed Ms. Sumrall
could be a material witness in support of his defense because she could provide
some assistance to the jury in issues involving whether or not the citizenry
knows whether it is a police officer or not. 
Ms. Sumrall=s counsel
argued to the trial court that there was no evidence to show Ms. Sumrall=s testimony would be relevant or
material with respect to Appellant=s
case.  In response, Appellant=s counsel argued that it would assist
the trier of fact and help the defense.  Appellant=s
counsel also argued that if the trial court granted the motion, it would
violate Appellant=s Sixth
Amendment right to compulsory process. 
The trial court granted the motion to quash the subpoena over Appellant=s objection.

After reviewing
the record, we conclude Appellant made no plausible showing that
Ms. Sumrall=s
testimony would be both material and favorable to his defense.  Ms. Sumrall=s
testimony indicates that she had no knowledge of the facts and circumstances
which led to Appellant=s
arrest and had no opinion concerning arrests by undercover police
officers.  Ms. Sumrall did provide
information about the city council=s
hearings held in response to complaints about late night traffic stops on the
interstate highway by police officers in unmarked vehicles.  Ms. Sumrall also remarked that the council
members did not believe this really was a problem.  At trial, Appellant presented no evidence to
support his purported defensive theory that either he did not believe Officer
Diaz and Officer Carrasco were really police officers or that
they were individuals masquerading as police officers.  Moreover, the complaints heard at the city
council meetings were quite different from the circumstances and facts in
Appellant=s
case.  Appellant=s
argument constitutes a mere speculation that Ms. Sumrall=s
testimony would support his defense and as such, is insufficient to establish
materiality.  See Castillo, 901 S.W.2d at 553. 
Appellant failed to meet the burden for compulsory process, therefore
the trial court did not err in quashing the subpoena.  We overrule Issue Three.  

Lesser
Included Offense 








In Issue Four,
Appellant asserts the trial court erred in denying his request for a jury
instruction on the lesser included offense of evading arrest and
detention.  At the charge conference and
on appeal, Appellant argues the evidence shows that prior to the incident with
Officers Diaz and Carrasco, he had evaded arrest from Officer Lamb and during
the incident he was again attempting to evade arrest when he reversed his
vehicle.  Appellant contends the trial
was replete with facts and evidence where the same or less proof necessary for
aggravated assault of a peace officers established
evading arrest or detention.

We apply a
traditional two-prong test to determine whether Appellant was entitled to a
charge on a lesser-included offense.  See
Moore v. State, 969 S.W.2d 4, 8 (Tex.Crim.App.
1998); Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex.Crim.App.
1993)(en banc), cert. denied, 510 U.S. 919, 114
S.Ct. 313, 126 L.Ed.2d 260 (1993); Aguilar v.
State, 682 S.W.2d 556, 558 (Tex.Crim.App. 1985); Royster v. State, 622 S.W.2d 442, 446 (Tex.Crim.App. 1981)(plurality opinion).  First, we determine whether the offense is a Alesser included offense@ as defined in Article 37.09 of the
Code of Criminal Procedure, which in most cases requires deciding whether the
lesser-included offense must be included within the proof necessary to
establish the offense charged.  See
Tex.Code Crim.Proc.Ann.
art. 37.09 (Vernon 1981); Moore,
969 S.W.2d at 8; Bignall v. State, 887
S.W.2d 21, 23 (Tex.Crim.App. 1994); Ramirez v.
State, 976 S.W.2d 219, 226-27 (Tex.App.--El Paso
1998, pet. ref=d).  Second, the record must show some evidence
that would permit a rational jury to find that if the defendant is guilty of an
offense, he was guilty only of the lesser offense.  Feldman v. State, 71
S.W.3d 738, 750-51 (Tex.Crim.App. 2002); Moore,
969 S.W.2d at 8; Rousseau, 855 S.W.2d at 672.

Whether one
offense is a lesser-included offense of another is determined on a 

case-by-case
basis.  Jacob v.
State, 892 S.W.2d 905, 907 (Tex.Crim.App. 1995).  Under Article 37.09 of the Code of Criminal
Procedure, an offense is a lesser-included offense if:

(1)        it is
established by proof of the same or less than all the facts required to
establish the commission of the offense charged;

 








(2)        it differs from
the offense charged only in the respect that a less serious injury or risk of
injury to the same person, property, or public interest suffices to establish
its commission;

 

(3)        it differs from
the offense charged only in the respect that a less culpable mental state
suffices to establish its commission; or 

 

(4)        it consists of
an attempt to commit the offense charged or an otherwise included offense.

 

Tex.Code Crim.Proc.Ann.
art. 37.09.  In this case, only subparagraph (1) is
applicable in determining whether the asserted offense of evading arrest is a
lesser-included offense of the charged offense of aggravated assault on a
public servant.  As set forth in Jacob,
892 S.W.2d at 907-08, we employ a three-step analysis in making this determination.  See Noyola v.
State, 25 S.W.3d 18, 20-1 (Tex.App.--El
Paso 1999, no pet.).  First, we examine
the elements of the charged offense as they appear in the indictment, with
special attention to the facts required to prove the charged offense.  Jacob, 892 S.W.2d at
907; Noyola, 25 S.W.3d at 21.  AFacts
required@ means
the evidence legally required to prove the elements of the charged
offense.  Jacob, 892 S.W.2d at 908. 
Second, we examine the statutory elements of the offense sought as a
lesser-included offense.  Jacob, 892 S.W.2d at 907; Noyola,
25 S.W.3d at 21.  Lastly, we must examine
the proof presented at trial to show the elements of the charged offense.  Jacob, 892 S.W.2d at
907-08; Noyola, 25 S.W.3d at 21.  AIf
the facts required to prove the elements of the
lesser-included offense are not functionally the same or less than the charged
offense, it is not a lesser-included offense even if the facts presented at
trial could prove the lesser-included offense.@  Noyola, 25
S.W.3d at 21 (analyzing the Court=s
interpretation of Article 37.09(1) in Jacob v. State).








Here, Appellant
was charged with the offense of aggravated assault on a public servant.  See Tex.Pen.Code Ann. ''
22.01(a)(2), 22.02(a)(2), 22.02(b)(2).  The  indictment charged that Appellant
intentionally and knowingly threatened Officer Diaz, a public servant lawfully
discharging an official duty, with imminent bodily injury and used and
exhibited a deadly weapon, a motor vehicle, during the commission of the offense.  The statutory elements of the asserted
lesser-included offense of evading arrest or detention would require the State
to prove that Appellant intentionally fled from a person he knew to be a peace
officer attempting to lawfully arrest or detain him.  See Tex.Pen.Code Ann. '
38.04(a)(Vernon 2003). 
The charged offense does not require proof that Appellant intentionally
fled from a person he knew to be a peace office  nor does it require proof that the
assault occurred while the peace officer was attempting to lawfully arrest or
detain Appellant.  Rather, the charged
offense required proof of a threat of imminent bodily injury toward Officer
Diaz and the use or exhibition of a deadly weapon during the commission of that
assault by threat.  A lesser-included
offense must be established by less or the same proof, not proof of an
additional matter not required by the indictment for the charged offense.  See Tex.Code Crim.Proc.Ann. art.
37.09(1).  The
elements of Appellant=s
asserted lesser-included offense are not functionally the same or less than
those required to prove the charged offense. 
See Jacob, 892 S.W.2d at 908.  Therefore, the trial court did not commit
error in refusing to charge the jury on evading arrest or detention.  We overrule Issue Four.

Self-Defense
Instruction

In Issue Five,
Appellant contends the trial court erred in refusing his request for a 








self-defense
instruction.  During the charge
conference, Appellant=s
counsel objected to the lack of a self-defense instruction in the jury charge
under Section 9.31(c) of the Texas Penal Code. 
On appeal, Appellant argues that he was entitled to an instruction on
self-defense because he reasonably believed that his use of force was necessary
to protect against an apparent danger, which in this case was
two individuals confronting him with semi-automatic weapons.[2]  Further, Appellant argues that even if the
jury concluded that he should have known the individuals were police officers,
the officers=
use of greater force than necessary and whether his belief, fears, and action
were reasonable were fact issues for the jury.

A person is
justified in using force against another when and to the degree he reasonably
believes the force is immediately necessary to protect himself
against the other=s use or
attempted use of unlawful force.  See
Tex.Pen.Code Ann.'
9.31(a)(Vernon 2003). 
The use of force is not justified to resist an arrest or search that the
actor knows is being made by a peace officer, even though the arrest or search
is unlawful.  See Tex.Pen.Code Ann. '
9.31(b)(2). 
However, Section 9.31(c) provides a limited exception for justified use
of force against a peace officer:  (1)
if, before the actor offers any resistance, the peace officer uses or attempts
to use greater force than necessary to make the arrest or search; and (2) when
and to the degree the actor reasonably believes the force is immediately
necessary to protect himself against the peace officer=s
use or attempted use of greater force than necessary.  See Tex.Pen.Code Ann. '
9.31(c).








The defendant has
the initial burden of producing some evidence to justify submission of a
self-defense instruction.  Tidmore
v. State, 976 S.W.2d 724, 729 (Tex.App.--Tyler
1998, pet. ref=d); Shelvin v. State, 884 S.W.2d 874, 878 (Tex.App.--Austin 1994, pet. ref=d).  The State then has the burden of persuasion
to disprove evidence of the self-defense claim by proving its case beyond a
reasonable doubt.  Saxton v. State,
804 S.W.2d 910, 913‑14 (Tex.Crim.App.
1991).  In so doing, the State
does not have the burden of producing evidence to affirmatively refute the self‑
defense claim.  Id.
at 913.  A defendant need not
testify to raise the issue of self‑defense.  See Smith v. State, 676
S.W.2d 584, 586‑87 (Tex.Crim.App. 1984).  Self‑defense may be raised by the
evidence when witnesses testify to the defendant=s
words and acts at the time of the offense. 
See id.  If the evidence
raises the issue of self-defense, the trial court must submit a jury
instruction on the defensive theory, regardless of whether such evidence is
strong, feeble, impeached, or contradicted, and even if in the trial court=s opinion the testimony is not entitled
to belief.  Brown v.
State, 955 S.W.2d 276, 279 (Tex.Crim.App. 1997).








In the present
case, Officers Diaz and Carrasco testified that as they approached Appellant at
the front gate they identified themselves as police officers and displayed
their badges.  Officer Diaz testified
that they did not have their guns drawn at that time, but that he drew his
weapon when Appellant=s
vehicle started peeling out backwards onto the street.  Officer Carrasco=s
testimony differs in that he recalled having his weapon drawn prior to
Appellant reversing into the street, but after they had identified themselves
as police officers and displayed their badges. 
Defense witness Jose Mena testified that he
did not see what happened between Appellant and the officers.  Jorge Gomez Carrillo testified that he saw
Appellant reverse and leave, but did not see officers in front of Appellant=s vehicle or any guns drawn.  None of the evidence presented at trial was
contrary to the officers=
testimony that they repeatedly identified themselves as police officers to
Appellant.  Further, there is no evidence
in the record to suggest the officers used greater force than necessary in
attempting to make an arrest.  See
Walker v. State, 994 S.W.2d 199, 202 (Tex.App.--Houston
[1st Dist.] 1999, pet. ref=d)(requiring
some evidence in the record to raise the issue of whether the police used or
attempted to use excessive force before the justification of self-defense is
applicable).  Because the evidence failed
to raise the issue of self-defense, the trial court did not err in refusing
Appellant=s request
for a 

self-defense
instruction in the jury charge.  Issue
Five is overruled.  

Ineffective
Assistance of Counsel

In his sixth issue,
Appellant asserts that his trial counsel rendered ineffective assistance by
failing to subpoena District Attorney Jaime Esparza and/or assistant district
attorneys who could have lent support to his defensive theory-- his genuine
belief that he was fleeing from an individual known to retaliate against his
enemies.  In his brief, Appellant states he cooperated in the investigation and
prosecution of Tony DeSantio for operating a
prostitution operation out of strip clubs in El Paso, Texas.  Appellant also asserts that Tony DeSantio was also prosecuted for retaliation against
District Attorney Jaime Esparza.  In
effect, Appellant argues on appeal that his trial counsel failed to subpoena
and question the district attorney and staff about these allegations.








Claims of
ineffective assistance of counsel are reviewed under the two-prong test set out
by the United States Supreme Court in Strickland v. Washington, 466 U.S.
668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and
adopted by Texas in Hernandez v. State, 726 S.W.2d 53, 57 (Tex.Crim.App. 1986). 
To prevail, the defendant must show that trial counsel=s performance was deficient, that is,
counsel=s
representation fell below an objective standard of reasonableness.  Thompson v. State, 9
S.W.3d 808, 812 (Tex.Crim.App. 1999); Strickland,
466 U.S. at 687-88, 104 S.Ct. at 2064.  The defendant must also show that counsel=s deficient performance prejudiced his
defense.  Strickland,
466 U.S. at 687, 104 S.Ct. at 2064; Jackson v.
State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).  This requires the defendant to show there is
a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Strickland, 466 U.S.
at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771.  A
reasonable probability is a probability sufficient to undermine confidence in
the outcome.  Strickland, 466 U.S.
at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771.

In reviewing a
claim of ineffective assistance of counsel, we must indulge a strong
presumption that counsel=s
conduct falls within the wide range of reasonable professional assistance and
the appellant must overcome the presumption that the challenged conduct might
be considered sound trial strategy.  Thompson, 9 S.W.3d at 813; Strickland, 466 U.S. at
689, 104 S.Ct. at 2065.  Any allegation of ineffectiveness must be
firmly founded and affirmatively demonstrated in the record to overcome this
presumption.  Thompson, 9 S.W.3d
at 813; see Jackson, 877 S.W.2d at 771. 
In the majority of instances, this task is extremely difficult because Athe record on direct appeal is simply
undeveloped and cannot adequately reflect the failings of trial counsel.@ 
Thompson, 9 S.W.3d at 814.  When faced with a silent record as to counsel=s strategy, this Court will not
speculate as the reasons for counsel=s
actions.  See Jackson, 877 S.W.2d at 771.  It
is the defendant=s burden
to prove ineffective assistance of counsel by a preponderance of the
evidence.  Thompson, 9 S.W.3d at 813.








In this case,
Appellant filed a general motion for new trial, but it did not allege
ineffectiveness of his counsel and no hearing was held on the motion.  Appellant=s
claims as to what the district attorney=s
staff would have testified to is not supported by the
record.  Further, the record is silent as
to trial counsel=s reasons
for his alleged failure to subpoena the district attorney and assistant
district attorneys.  Therefore, Appellant
has failed to overcome the strong presumption that trial counsel=s conduct falls within the wide range
of reasonable professional assistance.  See
Thompson, 9 S.W.3d at 814.  Issue Six is overruled.  

We affirm the
trial court=s
judgment.

 

 

July
24, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.

 

(Do Not Publish)











[1]
We note that on appeal, Appellant does not challenge the sufficiency of the
evidence with respect to the deadly weapon finding or the jury=s determination that Officer Diaz, as a
public servant, was lawfully discharging an official duty. 





[2]
At the charge conference, Appellant=s
counsel argued that Appellant=s
form of 

self-defense
was the act of getting away from the officers and when he could not abandon the
encounter, he showed some resistance to a great threat of force, the officers= pistols.  Under Appellant=s
defense theory, his use of force was the acceleration of his vehicle, but he
denied using the vehicle as a weapon.